CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
APR 09 2010
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AMANY MOHAMED RAYA, | ) |
| Plaintiff, | ) Civil Action No. 7:09CV00169 |
| v. | ) **MEMORANDUM OPINION** |
| HILLARY RODHAM CLINTON, et al., | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendants. | ) |

In this action for declaratory and mandamus relief, the plaintiff, Amany Mohamed Raya, seeks an order declaring her to be a citizen of the United States, and thus, a United States national, and an order requiring the Department of State to issue her a United States passport. The case is presently before the court on the defendants' motion to dismiss and alternative motion for summary judgment. For the reasons that follow, the defendants' motion to dismiss will be granted in part and denied in part, and the defendants' motion for summary judgment will be granted.

## Background

The plaintiff was born on October 9, 1981 at Walter Reed Army Medical Center in Washington, D.C. to Mohamed Aly Mohamed Raya (the plaintiff's father) and Nabila Salama (the plaintiff's mother). At the time of the plaintiff's birth, the plaintiff's father was a citizen of the Arab Republic of Egypt. Approximately two years before the plaintiff was born, the plaintiff's father was appointed by the Egyptian government to a diplomatic position with the Egyptian Embassy in Washington, D.C.

In her complaint, the plaintiff alleges that her father's diplomatic visa expired five months prior to her birth, and that his duties as an attaché to the Egyptian Embassy expired four months

before she was born. The plaintiff further alleges that her father resided in Egypt on the date of her birth, where he was serving in the Egyptian armed forces, and that her mother was an Egyptian national illegally present in the United States on an expired diplomatic visa.

On June 1, 2004, the plaintiff applied for a United States passport. Her application was denied by the New Orleans Passport Agency for the United States Department of State in May of 2005. By letter dated May 4, 2005, the Regional Director of the New Orleans Passport Agency explained as follows:

> It is a well-established principle that children born in the United States to individuals accredited to the United States in a capacity which entitles them to diplomatic privileges and immunities are not born subject to the jurisdiction of the United States and do not benefit from the Fourteenth Amendment's citizenship provision.
>
> Our records indicate that your father, Mohamed Raya, was appointed as Administrative Attache at the Embassy of the Arab Republic of Egypt on June 12, 1979 and that he continued in such capacity until December 13, 1981. You were born on October 9, 1981 in Washington, D.C. Because your father enjoyed privileges and immunities at the time of your birth, you were not born subject to the jurisdiction of the United States. Therefore, you did not acquire U.S. citizenship under the provisions of the Fourteenth Amendment by virtue of your birth in Washington, D.C. and you are not entitled to a U.S. passport.

(Compl. Ex. 5).

The plaintiff presently resides in Roanoke, Virginia. She filed the instant action on May 12, 2009 against Hillary Rodham Clinton, Secretary, United States Department of State; Gladys Boluda, Acting Chief, Office of Protocol; Janice L. Jacobs, Assistant Secretary, Bureau of Consular Affairs; and Brenda Sprague, Deputy Assistant Secretary, United States Passport Services. In her complaint, the plaintiff asserts the following claims: (1) that she was born subject to the jurisdiction of the United States, and thus, that the denial of her passport

application violated her rights under the Fourteenth Amendment (Count I); (2) that she should be declared a United States national, pursuant to 8 U.S.C. § 1503[1] (Count II); (3) that she should be declared as having been born subject to the jurisdiction of the United States, pursuant to 28 U.S.C. § 2201 (Count III); (4) that the denial of her application for a passport violated the Administrative Procedure Act (Count IV); and (5) that she is entitled to a writ of mandamus compelling the Department of State to issue a passport, pursuant to 28 U.S.C. § 1361 (Count V).

On February 5, 2010, the defendants filed a motion to dismiss and alternative motion for summary judgment. In their motion, the defendants argue that Counts I, II, and III of the plaintiff's complaint should be dismissed for lack of subject matter jurisdiction, and that Counts IV and V should be dismissed for failure to state a claim upon which relief may be granted. Alternatively, the defendants argue that they are entitled to summary judgment with respect to Counts I, II, and III.

The court held a hearing on the defendants' motion on March 15, 2010. The matter has been fully briefed and is now ripe for review.

## Standards of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court may grant a motion to dismiss for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). When deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the

---

[1] The term "national" includes United States citizens, several categories of individuals born in outlying possessions of the United States, and other persons who "owe permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). In this case, the plaintiff requests a declaration that she is a United States national as a result of being a citizen of the United States.

3

proceeding to one for summary judgment." The party asserting subject matter jurisdiction has the burden of proving that the court has jurisdiction over the case. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

### I. Motion to Dismiss

For purposes of their motion to dismiss for lack of subject matter jurisdiction, the defendants have proffered evidence indicating that the United States Department of Homeland Security issued the plaintiff a notice to appear in February of 2008, which advised her that she is subject to removal under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who applied for admission to the United States without documentation. The notice also alleged that the plaintiff is subject to removal under 8 U.S.C. § 1182(a)(9)(B)(i)(I) because she has been unlawfully present in the United States for more than one year. During subsequent removal proceedings before an immigration judge, the plaintiff moved to terminate the proceedings on the basis that she is a United States citizen by birth. On October 28, 2008, the immigration judge issued a written opinion finding that the plaintiff is not a United States citizen, because her father was in diplomatic status on the date that she was born. On November 19, 2008, after the plaintiff appeared for an individual hearing and declined to request further review, the immigration judge ordered that the plaintiff be removed to Egypt pursuant to the charges in the notice to appear. The plaintiff did not appeal the immigration judge's decision.

Because the plaintiff raised the issue of her nationality in her motion to terminate the removal proceedings, the defendants argue that Counts I, II, and III should be dismissed for lack of subject matter jurisdiction. The defendants' argument is premised on provisions contained in two federal statutes, 8 U.S.C. § 1252(b)(5) and 8 U.S.C. § 1503(a).

Section 1252 of Title 8 governs judicial review of orders of removal. 8 U.S.C. § 1252. Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals

in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). The statute further provides that "[i]f the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court [of appeals] shall decide the nationality claim." 8 U.S.C. § 1252(b)(5). It is only if the court of appeals finds that a genuine issue of material fact does exist with respect to the petitioner's nationality that the court of appeals may transfer the proceeding to the district court for a hearing. Id.

To the extent the instant action is brought pursuant to § 1503(a) of Title 8, the defendants argue that an exception contained in that statute precludes the court from exercising jurisdiction in this case. Section 1503(a) provides as follows:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28, United States Code, against the head of such department or independent agency for a judgment declaring him to be a national of the United States, <u>except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this or any other act, or (2) is in issue in any such removal proceeding</u>. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts.

8 U.S.C. § 1503(a) (emphasis added).

Here, the defendants do not dispute that the denial of a passport application is an occurrence which constitutes the denial of a right or privilege as a United States national, for purposes of § 1503(a). See Whitehead v. Haig, 794 F.2d 115, 119 (3d Cir. 1986) (holding that the denial of a passport application gives rise to an action under § 1503(a)). Instead, the defendants contend that the plaintiff's claims are subject to dismissal under § 1503(a)(1), since the plaintiff's status as a United States national "arose by reason of, or in connection with" a removal proceeding. 8 U.S.C. § 1503(a)(1).

While the United States Court of Appeals for the Fourth Circuit has not been presented with the opportunity to interpret the exception on which the defendants rely, two of its sister circuits have had the occasion to construe and apply the exception. For the reasons set forth below, the court concludes that a plain reading of § 1503(a) and the interpreting case law establishes that the exception does not bar the exercise of jurisdiction in this case.

As previously stated, § 1503(a)(1) provides that no declaratory judgment action may be instituted in any case if the issue of the subject's status as a United States national "arose by reason of, or in connection with any removal proceeding under this or any other act . . . ." 8 U.S.C. § 1503(a)(1) (emphasis added). In Rios-Valenzuela v. Dep't of Homeland Security, 506 F.3d 393 (5th Cir. 2007), the United States Court of Appeals for the Fifth Circuit held that this exception "focuses on the proceeding in which the particular claim to citizenship originates," and that "[as] long as a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction." Rios-Valenzuela, 506 F.3d at 398. Applying the exception, the Fifth Circuit held that the issue of the plaintiff's citizenship

originated in connection with removal proceedings, and thus, that the district court was barred from reviewing the denial of the plaintiff's application for citizenship, since the application was not filed until after the plaintiff was placed in removal proceedings.[2] Id.

The United States Court of Appeals for the Seventh Circuit recently assessed the ambit of the § 1503(a) exceptions in Ortega v. Holder, 592 F.3d 738 (7th Cir. 2010). In so doing, the Court first noted that "Congress channeled all appeals from final orders of removal to the courts of appeals by way of 8 U.S.C. § 1252(a)(5)," and that "Congress established a specific procedure for reviewing claims of nationality raised in the context of removal proceedings." Ortega, 592 F.3d at 744. Emphasizing that "the exceptions set forth in subsections (a)(2) and (a)(1) [of § 1503] are designed to protect removal proceedings from judicial interference and preserve 8 U.S.C. § 1252 as the exclusive means of challenging a final order of removal," the Court determined that "the language of § 1503(a)(1), read within the context of § 1503(a) and . . . related provisions of Title 8, make it clear that . . . if the question of nationality first arises in the context of a removal proceeding, the person must pursue his claims through those proceedings, culminating either with a declaration or denial of nationality." Id. at 743-744. The Court ultimately held § 1503(a)(1) prevented the plaintiff from challenging the denial of her original application for a certificate of citizenship, since the application arose as a result of or in connection with her removal proceedings. On the other hand, the Court held that the plaintiff

---

[2] The Fifth Circuit noted, however, that it "did not read the exception as forever hanging an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding," and that if the plaintiff was to again apply for citizenship at some future time, he would potentially be able to seek a declaratory judgment if the application is denied. Rios-Valenzuela, 506 F.3d at 399.

could challenge the denial of her second application for a certificate of citizenship, since the second application was filed after the removal proceedings were terminated, and thus, was "not tainted by its connection to removal proceedings." Id. at 746.

Applying the foregoing case law, the court must reject the defendants' argument that the court lacks jurisdiction over the plaintiff's claims under 8 U.S.C. § 1503(a)(1). Unlike the circumstances presented in Rios-Valenzuela, supra, the issue of whether the plaintiff is a United States national arose, or came about, in connection with her efforts to obtain a United States passport, and it is the 2005 decision denying her passport application that is the basis for the instant action, rather than the subsequent order of removal. While it is true that the plaintiff sought to terminate the removal proceedings based on the assertion that she is a United States citizen by birth, her nationality claim in the instant action clearly "finds its genesis outside of the context of the removal proceedings." Rios-Valenzuela, 506 F.3d at 399. Consequently, the court concludes that it has subject matter jurisdiction pursuant to 8 U.S.C. § 1503(a), and that, accordingly, the defendants' motion to dismiss under Rule 12(b)(1) must be denied. Compare North v. Rooney, 2003 U.S. Dist. LEXIS 11299, at *13 (D. N.J. June 18, 2003) (finding that the court likely had subject matter jurisdiction under 8 U.S.C. § 1503(a), since "the issue of plaintiff's citizenship actually arose well before the commencement of the 1999 removal proceedings"), with Boggiano v. Holder, 2010 U.S. Dist. LEXIS 13185, at *22-23 (D. N.J. Feb. 16, 2010) (holding that the plaintiff's citizenship application clearly arose, or came about, in connection with his removal proceedings, since the application was not filed until the removal proceedings were instituted against him, and thus, that the plaintiff's declaratory judgment action was barred by § 1503(a)(1)).

The defendants have also moved to dismiss the plaintiff's claim under the Administrative Procedure Act (Count IV) and her request for mandamus relief under 28 U.S.C. § 1361 (Count V). As the defendants explain in their motion, both statutes provide that judicial review of an agency action is only available when the plaintiff has no other adequate remedy. See, e.g., First Fed Sav. & Loan Ass'n v. Baker, 860 F.2d 135, 138 (4th Cir. 1988) (noting that a mandamus petitioner must show, inter alia, that she has "no other adequate remedy . . . available"); Long Term Care Partners, LLC v. United States, 516 F.3d 225, 233 (4th Cir. 2008) (emphasizing that judicial review under the Administrative Procedure Act is "limited to 'final agency action for which there is no other adequate remedy in a court'") (quoting 5 U.S.C. § 704). Because 8 U.S.C. § 1503(a) provides an adequate avenue by which the plaintiff may challenge the denial of her passport application, the court agrees with the defendants that Counts IV and V are subject to dismissal.

## II. Motion for Summary Judgment

The defendants alternatively argue that even if the court has subject matter jurisdiction over Counts I, II, and III, the defendants are entitled to summary judgment, since conclusive evidence in the record establishes that the plaintiff is not a United States national, and thus, that she may not be issued a United States passport. For the following reasons, the court will grant the defendants' motion for summary judgment.

The issuance of United States passports is solely the responsibility of the Secretary of State. 22 U.S.C. § 211a. Under current State Department regulations, a passport may be issued "only to a U.S. national." 22 C.F.R. § 51.2(a). As previously noted, the term "national" includes United States citizens, several categories of individuals born in outlying possessions of the

United States, and other persons who "owe permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

In this case, the plaintiff claims to be a United States national as a result of being a United States citizen by birth. Under the United States Constitution, however, citizenship is conferred only on persons "born or naturalized in the United States, <u>and subject to the jurisdiction thereof</u>." U.S. Const. amend. XIV, § 1 (emphasis added); <u>see</u> <u>also</u> 8 U.S.C. § 1401(a). The United States Supreme Court has long held that the jurisdiction clause of the Fourteenth Amendment was intended to exclude from its operation children of foreign ministers or diplomatic officers born within the United States. <u>Slaughter-House Cases</u>, 83 U.S. 36, 73 (1873); <u>United States v. Wong Kim Ark</u>, 169 U.S. 649, 693 (1898). Thus, if the plaintiff's father was entitled to diplomatic privileges and immunities in this country on the date the plaintiff was born, the plaintiff is not a United States citizen. See <u>Nikoi v. Attorney Gen.</u>, 939 F.2d 1065, 1066 (D.C. Cir. 1991) ("Because one parent was a foreign official with diplomatic immunity when each child was born, the birth did not confer United States citizenship.").

Pursuant to the Diplomatic Relations Act of 1978, 22 U.S.C. §§ 254a-254e, the governing law in the United States on the issue of diplomatic privileges and immunities is the Vienna Convention on Diplomatic Relations (Vienna Convention). <u>Tabion v. Mufti</u>, 73 F.3d 535, 538 (4th Cir. 1996). The Vienna Convention provides diplomatic agents a broad array of privileges and immunities, most notably "absolute immunity from criminal prosecution and protection from most civil and administrative actions brought in the 'receiving State,' <u>i.e.</u>, the state where they are stationed." <u>Id.</u> at 537. Under Article 37 of the Vienna Convention, "members of the family

of a diplomatic agent forming part of his household" are also entitled to the privileges and immunities specified in Articles 29 to 36. Vienna Convention at art. 37.

The Vienna Convention "premise[s] diplomatic immunity upon recognition by the receiving state." United States v. Lumumba, 741 F.2d 12, 15 (2d Cir. 1984). Pursuant to Article 10 of the Vienna Convention, a foreign state that sends individuals to serve in a diplomatic mission must notify the receiving state of "the appointment of members of the mission, their arrival and their final departure or the termination of their functions with the mission." Vienna Convention at art. 10. The Vienna Convention further provides that the receiving state may require that the size of a diplomatic mission be kept within particular limits, refuse to accept officials of a particular category, or determine, at any time and without having to explain its decision, "that the head of the mission or any member of the diplomatic staff of the mission is persona non grata or that any other member of the staff of the mission is not acceptable." Vienna Convention at art. 9. Pursuant to Article 43 of the Vienna Convention, the function of a diplomatic agent comes to an end:

> (a) on notification by the sending State to the receiving State that the function of the diplomatic agent has come to an end; [or]
>
> (b) on notification by the receiving State to the sending State that, in accordance with paragraph 2 of Article 9, it refuses to recognize the diplomatic agent as a member of the mission.

Vienna Convention at art. 43. Once the functions of a person enjoying privileges and immunities have come to an end, such privileges and immunities normally cease "at the moment when he leaves the country, or on expiry of a reasonable period in which to do so." Vienna Convention at art. 39.

In the United States, "a person's diplomatic status is established when it is recognized by the Department of State." Restatement (Third) of Foreign Relations Law of the United States § 464 (1987). In the Fourth Circuit, as in other circuits, a certification by the Department of State that an individual was, or was not, a diplomatic agent is binding on the court when it is based on a reasonable interpretation of the Vienna Convention. United States v. Al-Hamdi, 356 F.3d 564, 573 (4th Cir. 2004). In such cases, the court may not review the State Department's factual determination as to whether an individual was entitled to diplomatic privileges and immunities on a particular date. Id. ("[W]e hold that the State Department's certification, which is based upon a reasonable interpretation of the Vienna Convention, is conclusive evidence as to the diplomatic status of an individual. Thus, we will not review the State Department's factual determination that, at the time of his arrest, Al-Hamdi fell outside the immunities of the Vienna Convention."); see also In re Baiz, 135 U.S. 403, 421 (1890) (noting that "the certificate of the secretary of state . . . is the best evidence to prove the diplomatic character of a person"); Carrera v. Carrera, 174 F.2d 496, 497 (D.C. Cir. 1949) (emphasizing that "[it] is enough that an ambassador has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been communicated to the court"); Abdulaziz v. Metro. Dade County, 741 F.2d 1328, 1331 (11th Cir. 1984) (recognizing that "courts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status").

In the instant case, the defendants have submitted a certified determination by the State Department that the United States recognized the plaintiff's father as enjoying privileges and immunities as a diplomatic agent of the Arab Republic of Egypt from June 12, 1979 to December

13

13, 1981. Relying on the Fourth Circuit's decision in Al-Hamdi, supra, the defendants argue that the certification is conclusive evidence on the issue of the plaintiff's father's diplomatic status.

In response to the defendants' motion, the plaintiff has submitted evidence indicating that her father's duties as a diplomatic agent ended prior to her birth in October of 1981, including a memorandum prepared by the Egyptian Ministry of Defense in December of 2004. At oral argument, the plaintiff contended that, in light of such evidence, the State Department's certification cannot be deemed to be a "reasonable" application of the Vienna Convention within the meaning of Al-Hamdi. The plaintiff also argued that she should be permitted to engage in discovery with the State Department before the court considers the defendants' summary judgment motion. For the following reasons, the court concludes that it is clear from the record that the certification from the State Department was based on a reasonable application of the Vienna Convention, that the certification was not arbitrary or capricious, and that it was supported by substantial evidence. Consequently, the court agrees with the defendants that the certification is conclusive evidence on the issue of the plaintiff's father's diplomatic status, and, thus, that no further discovery is warranted.

According to a declaration from Holly Coffey, Deputy Assistant Chief of Protocol, the State Department based its certification on two forms submitted to the State Department by the Egyptian Embassy -- a Notification of Appointment of Foreign Diplomatic Officer (Form DS-1497) dated June 14, 1979, and a Notice of Final Departure of Foreign Diplomatic Officer (Form DS-1497a) dated December 11, 1981. The Notice of Appointment formally notified the State Department that the plaintiff's father arrived in Washington, D.C. on June 12, 1979, and that his diplomatic position became effective on that date. The Notice of Final Departure from the

Egyptian Embassy formally notified the State Department that the plaintiff's father's diplomatic service would terminate on December 13, 1981, and that he would depart the country on January 12, 1982. Coffey emphasizes in her declaration that the State Department's receipt of the Notice of Final Departure "triggers the end of privileges and immunities for the individual, which takes effect only after the diplomat has a reasonable amount of time to depart the country."

Upon review of the applicable provisions of the Vienna Convention, it is without question that the State Department's certification was not arbitrary or capricious and was instead based on a reasonable application of the treaty. As previously summarized, the Vienna Convention requires sending countries to provide formal notice of a diplomatic agent's appointment and termination, and specifically states that an agent's diplomatic functions come to an end on notification of termination by the sending country. The treaty further provides that once an agent's diplomatic functions have come to an end, the agent's diplomatic privileges and immunities cease at the moment he leaves the United States, or upon the expiration of a reasonable period in which to do so. Thus, it appears that the documents relied upon by the State Department represent the most authoritative evidence as to the status of plaintiff's father at the time of her birth.

Based on foregoing provisions, the court concludes that the State Department's certification was based on a reasonable application of the Vienna Convention, and thus, that it is conclusive evidence as to the plaintiff's father's diplomatic status. As a result, this court may not go behind the State Department's determination that the plaintiff's father enjoyed diplomatic privileges and immunities from June 12, 1979 through December 13, 1981, or permit the plaintiff to engage in further discovery on this issue. See Al-Hamdi, 356 F.3d at 573 (refusing to review

the State Department's factual determination that the defendant was not entitled to diplomatic privileges and immunities at the time of his arrest, since the State Department's certification was based on a reasonable interpretation of the Vienna Convention).

## Conclusion

Because the certification from the State Department conclusively establishes that the plaintiff's father enjoyed diplomatic privileges and immunities in the United States on the date that the plaintiff was born, the plaintiff is not a United States citizen. Slaughter-House Cases, 83 U.S. at 73; Wong Kim Ark, 169 U.S. at 693. Consequently, the plaintiff is not entitled to a judgment declaring her to be a United States national or an order requiring the Department of State to issue her a United States passport. See 8 U.S.C. § 1101(a)(22) (defining the term "national"); 22 C.F.R. § 51.2(a) (providing that passports may only be issued to United States nationals).

For the reasons stated, the motion to dismiss filed by the defendants will be granted in part and denied in part, and the court will grant the defendants' alternative motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

**ENTER**: This ___ day of April, 2010.

_____
United States District Judge